UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20017-CR-Middlebrooks/Garber

UNITED STATES OF AMERICA,

v.

WALKER WRIGHT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from United States District Judge Donald M. Middlebrooks. Pursuant to such reference the Court has received the defendant Wright's Motion to Suppress Physical Evidence and Statements [DE 17] and the government's response in opposition. A hearing on said motion was held on April 13th, 2009. A supplemental hearing was held on April 20th, 2009. The defendant appeared with his attorney of record, Anthony J. Natale, Assistant Federal Public Defender, and the government was represented by Assistant United States Attorney Christopher Angell.

## FACTUAL BACKGROUND

On October 6, 2008, a "gun bounty tip" was received by the Miami-Dade Police Department (MDPD) advising that "a listed suspect Walker is walking around the neighbor [*sic*] with a black 9mm firearm in his wrist band. Caller states that suspect is also responsible for abusing his girlfriend's children. Caller states that suspect is very dangerous and has an angerment [*sic*] problem and likes taking it out of the childern [*sic*] and his girlfriend." The tip gave the address of 17430 SW 103 Avenue in Perrine, Florida. Detective Jason Gambill of MDPD proceeded to that address but

testified that it was a home under construction.  He and two other officers drove around in the area in  unmarked police cars, and he spoke with two young females at a different address, to whom he introduced himself.  The police were not wearing uniforms but did wear bullet-proof vests with badges on them.  Each officer had  sidearms that were never removed from their holsters.  He asked one of the females, Latisha Jefferson, if she lived in the house and she responded that she did.  He also asked if Walker was home and she said that he was inside.  The detective asked if he could go inside and talk with him, and she told him to go ahead.  At this point the officers approached the front door, which was open.  The police knocked on the door and identified themselves as police. The young women came to the front door from the side of the house and again advised the police that Walker was inside.

The police then entered the house with the permission of an occupant, Latisha Jefferson, who also entered, telling the police that Walker is somewhere in the house.  Detective Gambill testified that at this time Walker appeared after leaving the bedroom area.  Detective Gambill introduced himself to Walker as a police officer and advised that they were there because of the tip received that he had a firearm.  Walker said that he had a firearm located in his bedroom, under his bed.  He then motioned to the detective to show where the firearm was located.  He led the detectives into the bedroom and was stopped from reaching under the bed.  The weapon was retrieved by the detective, who found the weapon to be a small shotgun with a sawed off barrel; it was not loaded.  The defendant was then placed under arrest and was transported back to MDPD Station 4.

At the station the defendant was read his *Miranda* rights from a form by Detective Gambill, which he initialed and signed, and then signed a waiver of his rights.  The interview was conducted by Detectives Gambill and Travieso, neither of whom had their weapons drawn.  Prior to the

questioning the defendant was asked biographical question relating to his education, if he was under the influence of medication, drugs or alcohol and if he suffered from any mental illness, to which he responded in the negative. Detective Gambill testified that the defendant was fluent in English and that he understood each of his rights after the detective had read them to him and was not under the influence of drugs or alcohol. He also stated that he was willing to speak with the police without an attorney present.

In his statements to the police, which was not recorded, the defendant stated that the shotgun was left at his house by a friend named Roy. The defendant then prepared a written statement in his own handwriting after he had been advised that he did not have to make such statement, which was received in evidence.

The defendant was shown the *Miranda* rights form, the waiver of rights form, and his written statement, all of which he recognized and admitting signing. Said documents were received in evidence at the suppression hearing.

The defendant offered the testimony of Rosco Guzman, an investigator employed by the Federal Public Defender's office. He basically testified that the address on the Gun Bounty record, was that of a home under construction without a roof. This address was 17430 S.W. 103 Avenue, Perrine Florida. Such fact was later confirmed by additional testimony from Detective Gambill. Mr. Guzman then testified that he went to the correct address of 17340 S.W. 103 Avenue and conducted an inspection of such premises.

The defense also offered the testimony of Ravens Jefferson, a teenager who lives at 17340 S.W. 103 Avenue. She explained that she was in the front yard of those premises at the time of the arrest. She testified that there were 5 or 6 police officers at the scene, in contrast with the testimony

of Detective Gambill, who testified that there were only 3 police officers present. She testified that the police never asked for permission to go in the house and that Latisha did not give permission. It must be noted, however, that Latisha did not testify.

Ravens Jefferson, whose mother was in a relationship with the defendant, testified that the front door was cracked open and she said that the police then entered the house with their weapons drawn and also had a taser. She also said that the police woke the defendant from a sleep and was brought out by the police in handcuffs. The testimony of Detective Gambill was in stark contrast to the Jefferson testimony; he approached the partially opened front door and the defendant appeared after the police had knocked on the door. Gambill stated that the police weapons were not drawn and they advised the defendant why they were present. They asked him if he had a firearm, he responded affirmatively, motioned them in, and then led the police to the bedroom where the weapon was stored. The defendant testified and stated that he was awakened by the police who put their guns in his face. He testified that he was told by the police that if he cooperated in their investigation and also provided reliable information regarding other persons involved in criminal activity, he would not be prosecuted in federal court. Such promise was denied by Detective Gambill during his rebuttal testimony. The defendant also testified that he advised the police that there was a firearm under his bed and he took them to it. He also testified that he was not read his *Miranda* rights and was told to sign the form and waiver. The defendant has an extensive record of arrests and convictions.

The Court feels it necessary to comment on the irregularities appearing in the police offense report, arrest report, and entries on their daily activity reports. In each instance such documents reflect the incorrect address of the location where the search took place: 17430, the home under

construction, instead of the correct address of 17340. Other than this being careless documentation by the police, such fact does not impact on the ultimate ruling on the Motion to Suppress. The police testified that after originally going to the incorrect address they cruised in the neighborhood and stopped to talk with the young girls in front of the correct address. The correct location was right around the corner from the wrong address.

## DISCUSSION

The government has appropriately conceded that the defendant has standing to bring his Motion to Suppress.

The defense claims that the entry on to the property, house, and bedroom were unlawful because the police lacked probable cause or consent to enter the premises. This assertion and basis set forth by the defense is unavailing. The Court finds that the officers entered the premises with the consent of an occupant, one Ravens Jefferson. The government's reference to the "knock and talk" exception to the requirement of a search warrant is appropriate. *United States v. Sledge,* 2008 WL 5056400 (N.D.Fla.2008); *United States v. Tobin*, 923 F.2d. 1506, 1512 (11th Cir. 1991). The basis for allowing such exception is that there is an implied consent that a home's resident's afford members of the public to make use of the paths of ingress and egress to the home for the purpose of contacting the occupant or resident of that premises. Here, the initial entry onto the property was proper, the police did not exceed the scope of the consent they had obtained from Ravens Jefferson, and the home's occupant voluntarily consented to the search of the home. Further, the defendant himself had motioned the police into the house to show them the location of the weapon. Thus, the issue of the voluntariness of the defendant's consent is a question of fact to be considered in light of all of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223-29 (1973). In making such

determination the Court must consider whether such consent was voluntary, the custodial status of the person giving such consent, the presence of coercive police activity; the extend and level of cooperation with the police, the person's knowledge that he could refuse to give such consent, and the education, intelligence, and subjective state of the mind of the person consenting. *Tukes v. Dugger*, 911 F.2d 508, 517 (11th Cir. 1990). The Court finds that the defendant's consent was clearly voluntary and was obtained without police coercion, the defendant was not in custody at the time, and that, given his history of familiarity with the criminal justice system and his extensive record of arrests and convictions, was aware that he did not have to give his consent.

The Court finds that the defendant was fully and properly advised of his *Miranda* rights and was also familiar with them because of his extensive past involvement in the criminal justice system. His statements directing the officers to the weapon were given prior to his being placed in custody and did not necessitate the giving of his rights. Such rights were, in fact, given to him following his arrest after the location of the weapon. Accordingly, all of the defendant's statements were lawful and are not subject to suppression.

The Court, having heard the testimony of witnesses at this hearing, finds that the testimony of Detective Gambill, who has no interest in the outcome of this case, is highly credible. He was responsive to questions in a thoughtful manner and appropriately acknowledged the errors revealed in the various police reports.

On the other hand, the Court finds the testimony of Ravens Jefferson to be unreliable. She has an interest in the outcome of these proceedings since the defendant is in a relationship with her mother and the defendant resides in the same home with them. Her testimony regarding the police entering the home with their guns drawn is simply unbelievable for it is difficult for the Court to

6

believe that the police, if their guns had been drawn, would permit teenage youngsters to enter the house right behind them because of the obvious possibility that violence could take place.

The Court finds that the defendant has failed to offer proof that the entry onto the premises was in violation of the defendant's Fourth Amendment rights and that his statements were coerced without his having received his *Miranda* rights.

## CONCLUSION AND RECOMMENDATION

For reasons set forth above and based upon the Court's review of the record, and consideration of the submissions of the parties, the undersigned respectfully

RECOMMENDS that the defendant Wright's Motion to Suppress Physical Evidence and Statements of the Defendant be DENIED.

The parties have ten (10) days from the date of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. See 28 U.S.C. §636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir.), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 24th day of April, 2009.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE